IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
───────────────────────────────────────────────────────────────

ROBERT J. ARTIS,

                            Plaintiff,                                OPINION & ORDER

   v.

                                                                     12-cv-589-wmc

MICHAEL MEISNER *et al.*,

                            Defendants.
───────────────────────────────────────────────────────────────

      In this civil action, plaintiff Robert J. Artis alleges that defendants, prison officials at Columbia Correctional Institution ("CCI"), acted with deliberate indifference to his serious medical needs in denying him treatment for his severe stomach pain, as well as committed related acts of negligence and medical malpractice. Believing that there were material facts that precluded summary judgment as to all but one of the named defendants, defendants originally filed a motion for partial summary judgment as to that defendant. (Dkt. #27.) After concluding that Artis had contradicted several of his sworn statements during his deposition, which was taken after the deadline for dispositive motions, the court granted defendants leave to file an additional motion for summary judgment based on the newly-discovered, undisputed facts. (Dkt. #55.)

      Now before the court is defendants' additional motion for summary judgment (dkt. #56), which incorporates defendants' motion for partial summary judgment by reference. Various other motions filed by Artis are also pending before the court, including a motion for reconsideration (dkt. #25), a motion to compel (dkt. #32), a motion to hold a settlement conference (dkt. #41) and a motion to depose witnesses (dkt. #42). The court will address all of these pending motions in this opinion.

UNDISPUTED FACTS[1]

Plaintiff Robert J. Artis is an inmate who was incarcerated at CCI at all times relevant to this action. Defendants Jeffrey Murphy, Jill Ostrander and Edwin Tetzlaff served as correctional officers at all times relevant to this action. Defendant Joseph Reda was employed by the Wisconsin Department of Corrections ("DOC") at CCI as a Nurse Clinician 2 and worked at CCI between November 8, 2010, and October 18, 2014.

Artis's claims are premised on an incident that occurred the night of Saturday, July 9, 2011. Around that time, there were typically no on-site doctors at CCI during third shift on Fridays and Saturdays. If an inmate experienced an urgent medical need when no doctors were on-site, security contacted the on-call medical professional, who would advise staff how to attend to the inmate's needs. Reda was the on-call nurse for CCI the evening of July 9.

At about 10:15 p.m. on July 9, Supervising Officer Tetzlaff was notified that Artis was complaining of stomach pain. After Tetzlaff went to Artis's cell to observe and speak to him, Tetzlaff contacted Reda to advise that Artis was complaining of stomach problems. Tetzlaff also reported that Artis did not appear to be in pain and was not vomiting or struggling to speak. Based on this information, Nurse Reda thought it likely that Artis was suffering from a mild gastrointestinal issue, like heartburn or indigestion. Accordingly, Reda

---

[1] Plaintiff did not respond to defendants' additional motion for summary judgment, including defendants' additional proposed facts, despite being given an opportunity to do so. Given that the basis for defendants being granted leave to file an additional motion for summary judgment arose out of plaintiff contradicting his earlier sworn statements at deposition, the court will, therefore, accept these additional facts as undisputed. *See* Fed. R. Civ. P. 56(e)(2). That said, in order to ascertain which material facts remain in dispute, if any, the court also considers, where inconsistent, the proposed findings of fact the parties submitted as part of the briefing for defendants' partial motion for summary judgment, as well as Artis's deposition testimony. *See* Fed. R. Civ. P. 56(c)(3) ("The court need not consider only the cited materials, but it may consider other materials in the record.").

authorized Tetzlaff to provide Artis with over-the-counter Maalox to relieve the symptoms. When Tetzlaff offered Maalox to Artis, telling him that the nurse had ordered it for him, however, Artis refused it.

After refusing the Maalox, Artis continued to have stomach pain, and eventually he began dry heaving and throwing up blood. At some point, Officers Murphy and Ostrander were notified that Artis requested medical attention, although it is unclear how much either knew about Artis's symptoms initially. It is undisputed that Artis had not dry heaved or thrown up blood before his *first* interaction with Murphy (Defs.' PFOF (dkt. #59) ¶ 53), but there remains a dispute about whether Artis or his cellmate informed Murphy about those symptoms the *second* time Muphy interacted with Artis (Defs.' Resp. Pl.'s PFOF (dkt. #47) ¶¶5, 6). Similarly, it is undisputed that that Artis *himself* did not inform Ostrander that he had been dry heaving and throwing up blood (Defs.' PFOF (dkt. #59) ¶51), but it is disputed whether Artis's cellmate so informed Ostrander (Defs.' Resp. Pl.'s PFOF (dkt. #47) ¶8). There is no dispute that Murphy and Ostrander continued to refuse Artis's request for medical attention, apparently without consulting Nurse Reda or other medical staff.

Approximately an hour and fifteen minutes after Artis refused to take the Maalox, he overdosed on 90 of his cellmate's blood pressure pills. Tetzlaff again contacted Reda, this time to inform him of Artis's overdose. Reda determined that Artis would need to be removed from his cell and sent to Divine Savior Hospital, which he was. At the hospital, physicians treated Artis for his drug overdose, diagnosed him with gastritis, and prescribed omeprazole to relieve his stomach pain.

OPINION

**I. Defendants' Motion for Summary Judgment**

Prevailing on a deliberate indifference claim under the Eighth Amendment requires a plaintiff to prove both an objective and subjective component. To prove the objective element, a plaintiff must show that his condition was "objectively, sufficiently serious," such that it "has been diagnosed by a physician as mandating treatment or [is] one that is so obvious that even a lay person would perceive the need for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). With respect to the subjective component, a defendant must be subjectively aware of an inmate's serious medical need -- that is, he must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). For reasons explained below, plaintiff has failed to meet his burden of proof on the subjective component with respect to defendants Reda and Tetzlaff, but has enough evidence to go forward on his claim of deliberate indifference with respect to Murphy and Ostrander.

**A. Defendant Reda**

Artis was initially granted leave to proceed on claims for deliberate indifference and medical malpractice against defendant Reda. Those claims were premised on the assumption that the non-medical defendants -- Tetzlaff, Murphy and Ostrander -- fully informed Reda of Artis's symptoms, including that Artis was suffering excruciating stomach pain, vomiting blood and experiencing convulsions. At summary judgment, it is undisputed that Tetzlaff actually told Reda that while Artis had reported stomach pain, he did not

4

appear to be in pain and was not vomiting or struggling to speak. Moreover, Artis confirmed at his deposition that he had not yet vomited by the time he interacted with Tetzlaff. (Defs.' PFOF (dkt. #59) ¶52.) Finally, it is undisputed that when later informed of Artis's overdose, Reda promptly directed that he be sent off-site to a hospital.

On these facts, Artis wholly fails to prove the subjective element of his deliberate indifference claim against Reda. Reda knew only that Artis was complaining of stomach pain when he prescribed Maalox. Indeed, Reda had also been informed that Artis was *not* vomiting and did *not* appear to be in any pain at all. Therefore, Reda cannot be said to have known that Artis was suffering from an objectively serious medical need. *See Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir. 1996) (medical staff are not liable for deliberate indifference when they refuse to treat "minor aches and pains").

Furthermore, Reda appears to have taken reasonable steps to alleviate Artis's stomach pain on the limited information provided, or at least there is nothing in the record that would permit a lay juror to conclude otherwise. Thus, Reda cannot be held liable under the Eighth Amendment. Unsurprisingly, Artis concedes as much. (Pl.'s Br. Opp'n (dkt. #35) 3.)

As for the corresponding medical malpractice claim, Artis likewise concedes that summary judgment on that claim is appropriate due to Reda's lack of involvement in the harm that allegedly befell him. (*Id.* at 4.) Consequently, the court will grant summary judgment for Reda on both the Eighth Amendment and medical malpractice claims.

## B. Defendant Tetzlaff

After being alerted to Artis's request for medical attention, Officer Tetzlaff observed Artis in his cell, reported his condition to Reda and offered Artis Maalox prescribed by Reda for his stomach pain. In multiple sworn statements, Artis indicated that he informed Tetzlaff about dry heaving and throwing up blood, yet he testified at his deposition that he had not yet begun throwing up blood by the time he interacted with Tetzlaff at his cell.[2] (Dep. of Robert Artis (dkt. #54) 16: 7-12.) Artis further confirmed that his proposed findings of fact asserting that he and his cellmate informed Tetzlaff that Artis was dry heaving, throwing up blood and suffering from severe stomach pains were "incorrect." (*Id.* at 106: 24-107: 23.) Instead, Artis now claims that while lying motionless in the fetal position, Artis told Tetzlaff that his "stomach hurt" in response to Tetzlaff asking him what was wrong. (*See id.* at 21: 11-22.) Even when Tetzlaff presented him with the prescribed Maalox, Artis proposes no other facts indicating Tetzlaff was informed that Artis was dry heaving, throwing up blood and experiencing severe stomach pain. Also, there is no dispute that after he learned of Artis's overdose, Tetzlaff promptly contacted Reda to inform him about Artis's condition.

Based on Artis's own account of the facts then, he cannot prove Tetzlaff acted with the requisite culpability for a reasonable jury to find in his favor with respect to the subjective prong of his deliberate indifference claim. In particular, the undisputed facts show Tetzlaff reported to Reda that Artis was complaining about stomach pain, but was not

---

[2] With respect to the inconsistencies between his sworn statements to the court and the clarifications he made at his deposition, Artis explains that a "jailhouse lawyer" prepared at least some of his filings. (Dep. of Robert Artis (dkt. #54) 109: 4-13.) Artis also admitted at his deposition that he did not read at least some of his filings before affirming that the facts asserted were true and correct by signing them. (Dep. of Robert Artis (dkt. #54) 101: 14-19.) Going forward, Artis should carefully verify that *anything* he submits to the court is accurate to the best of his knowledge and belief, or expect to suffer the consequences. *See* Fed. R. Civ. P. 11; 28 U.S.C. § 1746.

vomiting or struggling to speak, which echoes Artis's deposition testimony. Tetzlaff also presented Artis with Maalox, which Reda had prescribed for his stomach pain. Accordingly, even if Artis *could* prove that the stomach pain he experienced when he first interacted with Tetzlaff constituted an objectively serious medical need, Artis can only show, at most, that Tetzlaff was negligent for failing to report more detailed observations of his symptoms to Reda. Proving that Tetzlaff acted negligently is not enough for Artis to prevail on his deliberate indifference claim. *See Lee v. Young*, 533 F.3d 505, 509 (7th Cir. 2008) (stating with respect to the culpable state of mind required for a deliberate indifference claim that "negligence or even gross negligence is not enough; the conduct must be reckless in the criminal sense"). Therefore, the court will also grant summary judgment for Tetzlaff.

### C. Defendant Murphy

There remains a dispute as to what Officer Murphy knew about Artis's condition on July 9, 2011. Defendants correctly point out that Artis contradicted the allegation in his complaint that Murphy knew Artis was spitting up blood and having convulsions the *first* time that Murphy interacted with him on July 9. (Defs.' PFOF (dkt. #59) ¶53.) With respect to the *second* time that Murphy interacted with Artis at his cell, however, a dispute still exists as to whether Artis or his cellmate informed Murphy that Artis was dry heaving, throwing up blood and experiencing severe stomach pains. (*See* Defs.' Resp. Pl.'s PFOF (dkt. #47) ¶¶5, 6.) At some point on July 9, Artis also testified that he began shaking from pain directly before he began vomiting blood. (Dep. of Robert Artis (dkt. #54) 17: 12-19.)

On these facts, a reasonable factfinder might conclude that a lay person could have recognized that Artis's symptoms required medical attention. *See Gayton v. McCoy*, 593

7

F.3d 610, 621 (7th Cir. 2010) (suggesting that "having blood in one's vomit" may amount to an objectively serious medical condition); *Cooper* 97 F.3d at 916-17 (stating that intense pain can create a serious medical need). Indeed, defendants concede that Artis's symptoms, namely vomiting blood and having convulsions, could constitute a serious medical need.[3] (Defs.' Opening Br. (dkt. #58) 11.)

With respect to the subjective prong of Artis's deliberate indifference claim against Murphy, there also remains a genuine issue of fact regarding Murphy's state of mind. Artis testified at his deposition that after being made aware that Artis had thrown up blood, Murphy made a statement to the effect that he was not going to get Artis medical attention because his supervisor had already "left the unit." (Dep. of Robert Artis (dkt. #54) 69:21-70:15.) Given that there are facts suggesting that Murphy declined to find medical assistance for Artis after not only being told that Artis had thrown up blood, but actually seeing the blood in Artis's toilet himself (*id.*), a reasonable factfinder could infer that Murphy disregarded a substantial risk to Artis's health. *See Farmer*, 511 U.S. at 837. Thus, Murphy is not entitled to summary judgment.

### D. Defendant Ostrander

Artis also proceeds on a deliberate indifference claim against Officer Ostrander, who visited Artis's cell on July 9 after Murphy's second interaction with Artis. (Dep. of Robert Artis (dkt. #54) 22: 1-15.) Although Artis conceded that he did not personally alert Ostrander to his condition (Defs.' PFOF (dkt. #59) ¶51), he also testified that his cellmate

---

[3] In fairness, defendants take issue with Artis's characterizing his shaking due to pain as "convulsions" because Artis testified that he did not have a seizure on July 9. Regardless of whether Artis used the correct term to describe his symptoms, his shaking at least supports an inference that his pain was sufficiently severe to rise to the level of a serious medical need.

told Ostrander that he was still in pain and needed medical attention (Dep. of Robert Artis (dkt. #54) 22: 13-24). While defendants dispute whether Artis's cellmate informed Ostrander that he was dry heaving, throwing up blood and suffering from intense stomach pain, the court is bound to assume this is so on summary judgment. Given that Artis also testified that he *had* suffered from those symptoms by the time that Ostrander encountered him, a reasonable factfinder could also conclude that Artis had an objectively serious medical need when he interacted with Ostrander.

Additionally, there is a genuine issue of fact with respect to the subjective element of Artis's claim against Ostrander. Upon being informed about Artis's condition, Artis testified that, Ostrander said that she was not going to help him because he should have taken the Maalox that Tetzlaff offered him. (Dep. of Robert Artis (dkt. #54) 53: 17-22.) Based on this testimony, a reasonable factfinder could conclude that Ostrander "actually knew of a substantial risk of harm to the inmate and acted or failed to act in disregard to that risk" out of spite. *Gil v. Reed*, 381 F.3d 649, 661 (7th Cir. 2004). Accordingly, Ostrander is not entitled to summary judgment.

II. Plaintiff's Motions

    A. Motion for Reconsideration (dkt. #25)

On January 27, 2015, this court denied Artis's request to use funds from his release account to pay for litigation costs, including copying costs and postage. Artis has since moved for reconsideration, citing to various Wisconsin state court decisions permitting prisoners to pay litigation expenses out of their release accounts. *See, e.g., Spence v. Cook*, 222 Wis. 2d 530, 587 N.W.2d 904 (Ct. App. 1998). According to Artis, cases like *Spence*

and Wisconsin's version of the Prisoner Litigation Reform Act ("PLRA") control, requiring this court to order disbursement of Artis's release account funds.

*Spence* held that under Wisconsin's version of the Prisoner Litigation Reform Act, release accounts are available to prisoners to pay their initial partial filing fee. It based that holding on Wis. Stat. § 814.29(1m)(d), which provides:

> If the court determines that the prisoner who made the affidavit [of indigency] does have assets *in a trust fund account, whether accessible to the prisoner only upon release or before release*, the court shall order an initial partial filing fee to be paid from that trust fund account before allowing the prisoner to commence or defend an action, special proceeding, writ of error or appeal. The initial filing fee shall be the current balance of the prisoner's trust fund account or the required filing fee, whichever is less.

*Spence,* 222 Wis. 2d at 536 (emphasis in original) (quoting Wis. Stat. § 814.29(1m)(d)). Based on that plain language, the *Spence* court concluded that "[r]easonably well-informed persons would not understand the italicized language to limit in any manner the availability of any funds held for the prisoner within the prison system, regardless of the title or purpose of the account in which the funds are held." *Id.* at 537. The court recognized that the Wisconsin Administrative Code stated release accounts could only be disbursed upon an inmate's release to field supervision, but concluded that "the PLRA supersedes this administrative code provision." *Id.* In a footnote, the *Spence* court also noted that it saw "no reason why other litigation fees and costs within the meaning of § 814.29, STATS., would not be payable with release account funds." *Id.* at 538 n.9.

In light of *Spence* and its suggestion that "other litigation fees and costs" were payable from an inmate's release account, Wisconsin state courts have since permitted prisoners to use their release accounts to satisfy various litigation costs, not just to pay the filing fee.

*See, e.g., State ex rel. Akbar v. Kronzer*, 2004 WI App 108, ¶¶ 2-4, 273 Wis. 2d 749, 681 N.W.2d 280.  In *Akbar*, a prisoner sought to use his release account to pay the cost of transcript preparation.  The Wisconsin Court of Appeals noted that the Wisconsin PLRA generally "sets forth the requirements for a prisoner who seeks to proceed without prepaying the 'fees or costs.'" *Id.* at ¶ 3 (quoting Wis. Stat. § 814.29(1m)(b)).  It further noted that previous Wisconsin case law made clear that the cost of preparing a transcript is a "fee" within the meaning of that section.  Finally, while recognizing that the power to order payment from a prisoner's release account comes from Wis. Stat. § 814.29(1m)(d), which refers specifically to filing fees, the court noted that subsection was "contained within a statute which addresses costs and fees more generally." *Id.* at ¶ 4.  Accordingly, it determined that: (1) prisoners may use release accounts to pay for *all* "fees or costs"; and (2) in disbursing those funds, courts should use the procedure in § 814.29(1m)(d).  *Id.*

Like Wisconsin state courts, our sister court in the Eastern District of Wisconsin has permitted prisoners to pay filing fees from their release accounts, in reliance on the language of the federal PLRA.  *E.g., Guman v. Bailey,* No. 09-CV-106, 2009 WL 1687578, at *1-2 (June 15, 2009); *Doty v. Doyle*, 182 F. Supp. 2d 750, 751-52 (E.D. Wis. 2002); *Spence v. McCaughtry*, 46 F. Supp. 2d 861 (E.D. Wis. 1999).[4]  Importantly, however, this court has

---

[4] Artis also cites to *Holm v. Grams*, No. 07-C-0342, 2014 WL 5106885 (E.D. Wis. Oct. 10, 2014), in which the Eastern District of Wisconsin granted an inmate's request for access to his release account without analysis or citation to authority.  *See id.* at *2.  *Holm* was a habeas corpus case, however, not a civil rights action governed by the PLRA, and the PLRA is the statute from which courts have derived their authority to order disbursement of funds from the release account.  *See, e.g., Doty,* 182 F. Supp. 2d at 751-52 (noting that "both the Wisconsin Prison Litigation Reform Act . . . and the federal Prison Litigation Reform Act . . . authorize the courts to order that the money in a prisoner's release account be made available" for filing fees); *Spence*, 46 F. Supp. 2d at 862 (noting that the PLRA created the "requirement that courts collect filing fees from prisoners' accounts").

not found any case in which a federal court permitted a prisoner to pay litigation *costs* from a release account under the *federal* PLRA.

This distinction matters, because the actual language of the two statutes supports different treatments. Unlike the Wisconsin PLRA, which addresses procedures to be followed when a prisoner wishes to bring a civil action without prepayment of "fees or costs" generally, *see* Wis. Stat. § 814.29, the federal PLRA refers specifically to procedures to be followed when a prisoner wishes to bring a civil action "without prepayment of fees or security therefor[.]" 28 U.S.C. § 1915(a)(2). The federal PLRA says nothing about costs, and at least one Circuit Court of Appeals has noted that granting *in forma pauperis* status under § 1915 "does not exempt litigants from the costs of copying and filing documents; service of documents other than the complaint; costs, 28 U.S.C. § 1915(f)(1); expert witness fees . . . ; or sanctions." *Porter v. Dep't of Treasury*, 564 F.3d 176, 180 n.3 (3d Cir. 2009) (internal citation omitted).

The court recognizes that Wisconsin has taken a more liberal approach in ordering the payment of litigation-related fees from release accounts, but that distinction is justified by the textual differences between the Wisconsin PLRA and the federal PLRA. Absent some authority *requiring* the prison to disburse Artis's release account funds, the court declines to interfere in the administration of Wisconsin state prisons in this manner, particularly when any such intervention may likewise interfere with the policies of "aid[ing] the inmate's reintegration into the community" and "reimburs[ing] the department for incarceration costs," which are the purposes of the release account. *See* Wis. Admin. Code § DOC 309.466(2). Accordingly, Artis's motion for reconsideration (dkt. #25) will be denied.

Artis asks in the alternative that this court certify this question for an interlocutory appeal under 28 U.S.C. § 1292(b). That statute permits a district judge to state that an order is immediately appealable when he is of the opinion "that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation[.]" The present denial of Artis's motion for reconsideration does not fit that category, and so this request will likewise be denied.

### B. Motion to Compel and Reset Deadlines (dkt. #32)

On March 23, 2015, Artis filed a motion to compel the defendants to provide him with copies of its summary judgment filings and with a complete answer to his first interrogatory, which was delayed pending release of plaintiff's medical records. He also asked that the court reset the summary judgment briefing deadline once he received those materials to ensure he could formulate his opposition.

On April 6, 2015, defendants filed a brief response indicating that: (1) they had sent copies of their summary judgment filings to plaintiff when filed; (2) they sent another copy of those materials upon receipt of the motion to compel; and (3) they have amended their answer to interrogatory no. 1 in light of their receipt of Artis's medical records. (Dkt. #34, 34-1.) On April 15, 2015, apparently having received the second set of materials, plaintiff was able to file his opposition to summary judgment. Accordingly, the motion to compel and reset deadlines will be denied as moot.[5]

---

[5] Plaintiff should advise the court in writing if he still maintains that defendants have failed to provide a complete answer to interrogatory no. 1.

### C. Motion for Settlement Conference (dkt. #41)

Next, Artis requests that the court order defendants' counsel to set up a telephone call to CCI so that he can discuss settlement with them. Defendants oppose the motion, indicating that they plan to take this case to trial. (Defs.' Br. Opp'n (dkt. #45).) It is not this court's policy to order parties to enter into mediation or settlement discussions. The parties are certainly free to discuss settlement, and Artis may reach out to defendants' counsel for that purpose, as well as the clerk of court's office, but Artis's motion requesting that the court *order* such discussions will be denied.

### D. Motion to Depose Witnesses (dkt. #42)

Finally, Artis requests that the court enter an order allowing him to take the depositions of various witnesses. He also asks that the order expressly permit that: (1) a DOC or Department of Justice ("DOJ") employee swear the witnesses; (2) the depositions be video-recorded using CCI or DOJ equipment; and (3) the depositions be introduced at trial in lieu of live testimony.

Defendants oppose Artis's request, pointing out that Fed. R. Civ. P. 28(c) states "[a] deposition must not be taken before a person who is any party's relative, employee, or attorney; who is related to or employed by any party's attorney; or who is financially interested in the action." While other DOJ and DOC employees do not necessarily fit the letter of this rule (since the DOC is not technically a "party" and other DOJ employees would not technically be employed by defendants' attorneys), defendants' concerns with the impartiality of other DOC and DOJ employees are not unreasonable. *Matthews v. Raemisch,* No. 10-cv-742-bbc, at 2 (W.D. Wis. Oct. 31, 2011) (noting that "impartiality problems arise from using any DOC employee as an officer" in a case against DOC employees).

Furthermore, defendants correctly point out that videotaping the depositions will not result in admissible evidence unless Artis produces a transcript. "For trial, the parties must submit the transcript of a deposition before the trial begins; if they do not, then the deposition cannot be used for any purpose at trial. As a result, the evidentiary value of an untranscribed deposition is zero." *Id.* at 3; *see also* Fed. R. Civ. P. 30, cmt., 1993 amendments, subdivision (b) ("A party choosing to record a deposition only by videotape or audiotape should understand that a transcript will be required by Rule 26(a)(3)(B) and Rule 32(c) if the deposition is later to be offered as evidence at trial or on a dispositive motion under Rule 56."). In the absence of agreement from defendants, the court declines to rule that the video-recorded depositions would be admissible at trial without a transcript and regardless of the witnesses' availability.[6]

This is not to say that Artis cannot take depositions of named witnesses. Given the problems with the arrangements he proposes, and in light of defendants' objections, however, the court will not grant his motion to depose witnesses under the conditions proposed.[7]

ORDER

IT IS ORDERED that:

1) Plaintiff Robert J. Artis's motion for reconsideration (dkt. #25) is DENIED.

---

[6] On the other hand, the court declines to rule at present that Artis *must* pre-pay the costs of a court reporter if he wishes to take depositions, as defendants request. If not available for trial by subpoena, the court would also entertain a motion to have the witness appear at trial by live video feed.

[7] Artis may wish to consider contacting the Wisconsin State Bar Association regarding the possibility of obtaining court reporting services through the Wisconsin Court Reporter Association's pro bono program.

2) Defendant Joe Reda's motion for summary judgment (dkt. #27) is GRANTED.

3) Plaintiff's motion to compel and reset deadlines (dkt. #32) is DENIED as moot.

4) Plaintiff's motion for a settlement conference (dkt. #41) is DENIED.

5) Plaintiff's motion to depose witnesses (dkt. #42) is DENIED.

6) Defendants' motion for summary judgment (dkt. #56) is GRANTED IN PART and DENIED IN PART, consistent with this opinion.

7) A scheduling conference will be set before Judge Crocker to reset the trial calendar in this matter.

Entered this 30th day of September, 2015.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge